**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3484-24

D.T. on behalf of L.T.,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
EDUCATION and RECORDS
CUSTODIAN JEANETTE
LARKINS,

    Defendants-Respondents.

_____

Argued May 13, 2026 – Decided July 13, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2374-24.

Walter M. Luers argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf and Jamie Epstein Law, attorneys; Walter M. Luers, Christina N. Stripp and Jamie Epstein, on the briefs).

Colin Klika, Deputy Attorney General, argued the cause for respondents (Jennifer Davenport, Attorney General, attorney; Sookie Bae-Park and Raymond R.

Chance, III, Assistant Attorneys General, of counsel;
Amna T. Toor, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff D.T., parent of minor L.T., appeals from the trial court's order dismissing plaintiff's complaint with prejudice. Plaintiff filed an Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, request for documents relating to an earlier administrative claim for her child under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.S. §§ 1400 to 1482. The trial court initially found defendants violated OPRA and awarded plaintiff attorneys' fees as the prevailing party. On reconsideration, the court found it misapplied the prevailing law, including the Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, and the New Jersey Pupil Records Act (NJPRA), N.J.S.A. 18A:36-19. The trial court then dismissed plaintiff's complaint with prejudice, finding that defendants produced records pursuant to NJPRA and vacating its award of attorneys' fees to plaintiff under OPRA.

On appeal, plaintiff argues the trial court erred in finding that plaintiff sought her own child's unredacted school records under NJPRA rather than OPRA. Alternatively, plaintiff asserts the trial court abused its discretion in granting defendants' motion for reconsideration. We affirm.

I.

2

A-3484-24

On December 29, 2021, plaintiff filed a due process petition pursuant to IDEA against the Lawnside Board of Education.[1] It sought "development of an appropriate Individualized Education Program (IEP), out-of-district placement, and compensatory education due to Lawnside's alleged failure to provide a Free Appropriate Public Education (FAPE)." On January 11, 2022, Lawnside forwarded the matter to the Office of Administrative Law (OAL) for adjudication. On January 19, 2023, the OAL rendered a final decision, and returned the physical file to defendants.

On September 26, 2023, plaintiff sought records associated with the final decision pursuant to OPRA. On October 4, defendant the Department of Education (DOE) and OPRA custodian, co-defendant Jeanette Larkin, produced certain records to plaintiff. Plaintiff wrote on October 5 and October 12, 2023, claiming the records provided were incomplete. She sought all related OAL records, asserting there were 100 documents. On October 12, 2023, Larkin notified plaintiff that "potentially responsive records" were being retrieved by defendants from an offsite storage facility, extending the due date to October

---

[1] See D.T. on behalf of L.T. v. Lawnside Board of Education, OAL Docket No. EDS 00267-22, DOE Docket No. 2022-33719 (2023 N.J. AGEN LEXIS 33).

20. Larkin then pursued six more extensions, pushing the due date for plaintiff's OPRA request back to December 29, 2023.

On December 26, 2023, plaintiff filed a complaint and order to show cause (OTSC), alleging defendants violated N.J.S.A. 47:1A-5(i) by failing to provide the requested records before October 20, 2023, and seeking production of all the requested records under OPRA. On December 28, the trial court granted plaintiff's OTSC. Defendants moved to dismiss the complaint and the trial court heard argument.

On May 1, 2024, the court granted plaintiff's OTSC, finding the request for production of documents was moot due to plaintiff receiving all requested documents, and noting all that remained was whether plaintiff was entitled to attorneys' fees. The court then determined that defendants violated OPRA, and that plaintiff was the prevailing party. Plaintiff moved for attorneys' fees, and defendants cross-moved to reconsider the court's May 1 order.

After argument, the trial court granted defendants' motion for reconsideration, dismissed plaintiff's complaint with prejudice, and denied plaintiff's application for prevailing party attorneys' fees. The trial court found that it failed to consider the interactions between NJPRA, FERPA and OPRA, erroneously finding defendants had violated OPRA. The court analyzed the

relevant provisions of NJPRA, FERPA and OPRA, as well as relevant case law.

It stated:

> Plaintiff sought access to student records under the NJPRA, specifically [p]laintiff requested L.T.'s unredacted special education records pertaining to her special education case. Plaintiff acknowledged that the documents were student records in the initial OPRA request. These records are expressly exempt from disclosure to the public under the regulations discussed above. Although [d]efendants provided some responsive records in September 2023, [d]efendants did not release the balance of the responsive records until [p]laintiff provided a parental consent release required by the NJPRA. The parental consent release allowed [p]laintiff access to L.T.'s student records through her position as L.T.'s parent via the NJPRA and FERPA, not as a general requestor under OPRA.
>
> Because the [c]ourt finds that [d]efendants properly denied [p]laintiff access to the records [under] OPRA and then properly provided them to [p]laintiff under the NJPRA, [p]laintiff is not a prevailing party under OPRA. Plaintiff's application for counsel fees is denied. Accordingly, the [c]ourt dismisses [p]laintiff's complaint.

On appeal, plaintiff argues the trial court erred in applying NJPRA rather than OPRA to her request for her child's records. In the alternative, plaintiff claims the court abused its discretion in granting defendants' motion for reconsideration.

5

II.

"A trial court's 'interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" McDermott v. Guaranteed Rate, Inc., 483 N.J. Super. 264, 284 (App. Div. 2025) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Thus, we review questions of statutory interpretation by the trial court de novo. State v. Carlton, 262 N.J. 629, 637 (2026).

Our review of a judge's grant or denial of a motion for reconsideration is abuse of discretion pursuant to Rule 4:49-2. State v. Ellison, 482 N.J. Super. 357, 371 (App. Div. 2025); Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion occurs when "a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." State v. Taylor, 261 N.J. 440, 449 (2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)) (internal quotation marks omitted).

We have held a motion for reconsideration should be granted solely in "those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the

significance of probative competent evidence . . . ." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

III.

A.

In interpreting a statute, "our 'paramount goal' is to discern the Legislature's intent." Cano v. Cnty. Concrete Corp., 483 N.J. Super. 459, 471 (App. Div. 2026). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Carlton, 262 N.J. at 637 (quoting State v. Gandhi, 201 N.J. 161, 177 (2019)).

Plaintiff contends that our jurisprudence following L.R. v. Camden City Pub. Sch. Dist. (L.R. I), 452 N.J. Super. 56 (App. Div. 2017), makes OPRA the sole means through which parents and guardians secure their child's student records. We disagree, and we conclude that NJPRA, rather than OPRA, applies here.

We first consider OPRA.

Under OPRA, "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the

7

right of access . . . shall be construed in favor of the public's right of access . . . ." N.J.S.A. 47:1A-1. Regardless of the policy favoring a public right of access, "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy . . . ." Ibid. Thus, OPRA provides that it will "not abrogate any exemption of a public record or government record from public access" under other statutes, regulations, court rules, and executive orders. N.J.S.A. 47:1A-9(a). NJPRA is a statute that establishes a regulatory framework for the "creation, maintenance and retention of 'pupil' records,"[2] and to safeguard them. The law codifies the right of access to student records for parents, guardians, and students of all ages, and protects their privacy by limiting the access of others. N.J.S.A. 18A:36-19. It follows that a public school's student records in New Jersey implicates the "other law" exemption under OPRA, through NJPRA. N.J.S.A. 47:1A-9(a), see Johnson et al., New Jersey Open Public Records & Meetings § 12:6 (2026).

---

[2] For ease of reference, we use the term "student" in lieu of "pupil" throughout this opinion.

Given the express intention of our Legislature, we conclude OPRA does not control, since NJPRA explicitly exempts student records from the public right of access. The trial court did not err in finding that NJPRA governs rather than OPRA

We now turn to the application of the NJPRA on this record. We conclude it applies to the release of L.T.'s unredacted student records.

The NJRA defines a student record as "information related to an individual student gathered within or outside the school district and maintained within the school district . . . . In the absence of any 'information related to an individual student,' the document(s) no longer meets the definition . . . ." N.J.A.C. 6A:32-2.1. NJPRA also establishes a list of authorized organizations, agencies, and persons which can obtain limited access to student records. N.J.A.C. 6A:32-7.5. The relevant entry on this list is "a student who has the written permission of a parent and the parent of a student under the age of 18, regardless of whether the child resides with the parent. . . ." The regulation also requires that the student record cannot disclose the student's place of residence and provides that a court may still deny access to such a record. N.J.A.C. 6A:32-7.5(e). Further, the NJPRA provides that:

> 1.  When responding to OPRA requests from any party, including parties other than

those listed at (e) above, a district board of education or charter school or renaissance school project board of trustees may release, without consent, <u>records removed of all personally identifiable information, as such documents do not meet the definition of a student record</u>.

[<u>Id.</u> at (g) (emphasis added).]

While the statute references OPRA, "it was not meant to undermine the student privacy protections set forth elsewhere in the [NJPRA]." Johnson et al., § 12:6; <u>see</u> <u>L.R. II</u>, 238 N.J. at 569 (Patterson, J., concurring). We have held the language of N.J.A.C. 6A:32-7.5(g) does not "signify" that OPRA and FERPA "allow courts to disregard the access limitations within our State's regulations concerning student records." <u>L.R. I</u>, 452 N.J. Super. at 85. This is so because "even the redaction of all personally identifiable information would not prevent reasonable persons 'in the school community' who lack personal knowledge of the parties involved from identifying the student 'with reasonable certainty.'" <u>Id.</u> at 90 (quoting 34 C.F.R. § 99.3(f) (2017)).

While the Legislature could have based NJPRA on its federal counterpart, it did not. <u>See</u> <u>L.R. II</u>, 238 N.J. at 563 (Patterson, J., concurring). Rather, NJPRA stands as an exception to OPRA, requiring higher scrutiny in the release of student records.

Here, plaintiff sought unredacted student records of her child. NJPRA requires strict compliance to protect the disclosure of such information from public access. Plaintiff sought L.T.'s <u>unredacted</u> student records, thus requiring a parental consent release under N.J.A.C. 6A:32-7.5(g). The sought-after records were not fully released by defendants until plaintiff complied with the NJPRA by providing a parental consent release. We agree with the trial court that this "release allowed [p]laintiff access to L.T.'s student records through her position as L.T.'s parent via NJPRA and FERPA, not as a general requestor under OPRA."

We conclude NJPRA controls the release of L.T.'s unredacted student records, not OPRA.

### B.

Plaintiff next argues that the trial court abused its discretion in granting defendants' motion for reconsideration. Plaintiff seeks a remand, asking us to direct the trial court to apply OPRA to compel production of the student records, rather than NJPRA, and to further direct the trial court to award plaintiff attorneys' fees and costs. We are unconvinced, and we affirm for the reasons set forth in Judge Robert Lougy's comprehensive fourteen-page written statement of reasons. We add the following brief comments.

11

Our Supreme Court noted that New Jersey "could have based state regulations on implemented and proposed federal standards," thus making it so that "student records redacted to remove student and parent names, addresses, social security numbers, and other personally identifiable information would be subject to public disclosure, even if those records retained other information relating to the individual student." L.R. II, 238 N.J. at 563 (Patterson, J., concurring). However, applying well-settled principles of statutory construction, we easily conclude that the Legislature did not intend to base NJPRA on its federal counterpart, FERPA. Ibid. Rather, the Legislature made NJPRA an exception to OPRA.

Because NJPRA is the controlling law for issuance of plaintiff's child's unredacted school records, there is no pathway to an attorneys' fees award. This is consistent with our prior holding on the question. "Like FERPA, the NJPRA and its governing regulations merely provide administrative remedies for a violation and do not provide for a private right of action or suppression." State v. J.S.G., 456 N.J. Super. 87, 105 (App. Div. 2018) (citing L.S. v. Mount Olive Bd. of Educ., 765 F. Supp. 2d 648, 664 (D.N.J. 2011)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division